**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**TIMOTHY DUPUIS, #K9498**                                                       **PLAINTIFF**

**VS.**                                                       **CIVIL ACTION NO. 4:08cv63-LRA**

**DALE CASKEY, SANDRA ATWOOD,
KENTRELL LIDDELL AND CHRISTOPHER EPPS**            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

### I. Procedural History

Timothy Dupuis [hereinafter "Plaintiff"], *pro se,* and Lee Thaggard, Pelicia E. Hall and Charles B. Irvin, counsel for Warden Dale Caskey, Sandra Atwood, and Christopher Epps [hereinafter "Defendants"], appeared before the undersigned United States Magistrate Judge on the 22nd day of October, 2008, for an omnibus hearing. This hearing was scheduled to insure the just, speedy and inexpensive determination of this *pro se* prisoner litigation and to determine whether or not Plaintiff's claims were supported by a factual or legal basis pursuant to 28 U.S.C. § 1915, as amended. On February 23, 2009, Defendants Caskey and Atwood filed a Motion for Summary Judgment, document number 28, which is now before the Court. This motion was amended by document number 30, filed on March 11, 2009, Defendants' Amended Motion for Summary Judgment. Plaintiff has filed responses to the motions, document numbers 29 and 33. The Court shall also consider Plaintiff's sworn testimony in the omnibus hearing as responsive to the motions.

Jurisdiction of this case is based upon 42 U.S.C. § 1983, and it was assigned to the undersigned United States Magistrate Judge for all purposes pursuant to the

consent of the parties by Order [docket entry number 20] entered by District Judge Tom S. Lee on October 27, 2008. Plaintiff has voluntarily dismissed the named Defendant, Ms. Kentrell Liddell, as she no longer works at the Mississippi Department of Corrections and has not been served with process.

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

## III. Factual Basis for Complaint

Most of the facts in this case are not in dispute. Plaintiff was incarcerated in the East Mississippi Correctional Facility in Meridian, Mississippi, from August 9, 2002, to the present. Defendant Dale Caskey is the Senior Warden of that facility, and Defendant Sandra Caskey is a Registered Nurse and the Health Services Administrator. Dr. Stephen Butler was the Medical Director of ECMF until sometime

prior to October 1, 2008. Dr. Rolando T. Abangan became the Medical Director beginning on October 1, 2008, until the present. Neither doctor is named as a Defendant.

Plaintiff had a cataract in his left eye. Plaintiff complained of failing sight as early as August 2, 2006, but he was not examined by an outside optometrist until September 27, 2007. The optometrist, Dr. Clark, recommended surgery. The medical director Dr. Butler disagreed and did not direct a specialist consultation or recommend surgery. Later, on January 21, 2009, after this lawsuit was filed, the new medical director Dr. Abangan recommended that Plaintiff be treated by an opthalmologist, Dr. Davis. Dr. Davis performed successful cataract surgery on February 10, 2009. Plaintiff's complaint at this time is that the surgery was delayed from September 2007, when Dr. Clark recommended it, until February 2009, approximately 17 months, and that the delay violated his constitutional rights. He also charges that he should have been examined after his first sick call request on August 2, 2006.[1]

The Court has reviewed Plaintiff's extensive medical records which are contained in Exhibit "I" to Defendants' Supplemental Motion for Summary Judgment.[2] The records confirm that Plaintiff has a history of mental health problems, including bipolar disorder, as well as a history of hypertension. He has been treated for those health problems

---

[1]The medical records do not confirm this sick call request. The records do show that Plaintiff made a sick call request asking for his eyes to be checked on August 22, 2003, and that he was given an eyeglass prescription by Dr. Jason Read on February 23, 2004. See Exhibit 2 to Defendants' Motion for Summary Judgment, Affidavit of Sandra Atwood, p. 2.

[2]All references to exhibits hereafter are to those submitted in connection with Defendants' Supplement to Motion for Summary Judgment, document 30.

extensively during his incarceration. In her Affidavits, Exhibits 1 & 2, Sandra Atwood reviewed the records in regard to Plaintiff's eyesight. Dr. Rolando T. Abangan also reviewed portions of Plaintiff's medical history by Affidavit, Exhibit "3." These affidavits give the medical history regarding Plaintiff's eyes, as set forth hereafter.

A Medical History & Physical Assessment taken on August 15, 2002, after Plaintiff arrived at EMCF, reveals that Plaintiff had no vision problems. On August 22, 2003, Plaintiff wrote a Sick Call Request asking to get his eyes checked, stating it had been three years since his last exam, and that he thought he might have an eye infection. He was given an eye exam on August 28, 2003, which showed him to have 20/70 vision in each eye without glasses.

On February 23, 2004, Dr. Jason Read, MD, with the Eye Clinic of Meridian, PLLC, wrote an eye glasses prescription for Plaintiff to address nearsightedness and astigmatism. On February 26, 2004, an Optical Laboratory Order for new glasses for Plaintiff was completed to order the glasses from PRIDE Enterprises. On February 22, 2005, a Pre-Segregation History & Physical was completed by Nurse Bobbie Edwards, RN, showing Plaintiff's pupils to be reactive and normal. On September 21, 2005, Dr. Stephen Butler (the EMCF's medical doctor at that time) completed a Physician/Advanced Practitioner Treatment Plain during Chronic Care Clinic. He noted that Plaintiff had dry eyes and allergic conjunctivitis. On January 24, 2007, a Medical History & Physical Assessment was completed by Dr. Butler and Nurse Atwood; it showed Plaintiff had vision problems for which he had eyeglasses.

On April 27, 2007, during Chronic Care Clinic, Dr. Butler completed a Physician/Advanced Practitioner Treatment Plan and noted that Plaintiff's right eye was

4

normal but that he was questionable for a cataract in his left eye. He made no recommendations for cataract care.

Upon EMCF's referral, Plaintiff was treated on September 26, 2007, by Dr. Grady M. Clark, Jr., an optometrist with Eyetech Eyecare Center in Meridian. Dr. Clark opined that Plaintiff had a Grade III left cataract and an extensive astigmatism in both eyes. He recommended surgery as soon as possible on the left eye. He opined that Plaintiff had anisometropia[3] due to swelling from the cataract development and also had aniseikonia[4] in both eyes. Dr. Clark reported that if he prescribed eyeglasses, Plaintiff would have double vision. He nevertheless ordered new glasses for Plaintiff, and Plaintiff received new glasses.

Dr. Butler examined Plaintiff on October 24, 2007, and noted that Plaintiff complained of decreased visual acuity in his left eye. He noted that Plaintiff's right eye had 20/20 vision and stated that he was positive for cataract in the left eye. Dr. Butler did not recommend surgery at that time or that Plaintiff be referred to an ophthalmologist.

Dr. Butler examined Plaintiff again on April 29, 2008, and again did not recommend cataract surgery. This was Plaintiff's last time to be treated by Dr. Butler before he left the employ of EMCF.

---

[3] According to Nurse Atwood's affidavit, "anisometropia" is a condition in which the two eyes have unequal refractive power and may cause a difference in images coming from the two eyes. Affidavit, Exhibit 2, p. 3.

[4] "Aniseikonia" means "unequal images" and is a binocular condition such that the image in one eye is perceived as different in size compared to the image in the other eye. Affidavit, Exhibit 2, p. 3.

5

On October 28, 2008, Plaintiff was seen by Dr. Abangan, the new medical director, and Dr. Abangan noted the cataract in his left eye and noted that he needed a referral to an ophthalmologist. Dr. Abangan saw Plaintiff again on January 21, 2009,[5] and confirmed the need for an examination by an ophthalmologist. An appointment was made that day for Plaintiff to be seen by an ophthalmologist on January 28, 2009.

On January 28, 2009, Plaintiff was examined by Dr. Woody D. Davis, an ophthalmologist. He concluded that surgery was necessary, and he performed that surgery successfully on February 10, 2009. At a follow-up visit on February 23, 2009, Dr. Davis issued a written report to Dr. Abangan, stating the following:

> I saw Mr. Dupuis who had a very advanced cataract in his left eye. He is 20/40 in the right with an early cataract and 20/400 in the left with a very dense cataract. He was taken to surgery where uneventful cataract extraction and astigmatic correction was done. Post-op he is doing very well and seeing 20/40 with pinhole.

Exhibit "A" to Affidavit, Exhibit "2".

At the omnibus hearing, Plaintiff orally reviewed his claims against the named Defendants. According to Plaintiff, since Defendant Warden Caskey agreed with Dr. Butler that Plaintiff did not need surgery, Defendant Caskey refused to obtain the needed care for Plaintiff. Defendant Atwood had told Plaintiff that she would monitor his case but she did not do so; she also refused to recommend the needed care. Defendant Epps is the Commissioner of the Mississippi Department of Corrections ["MDOC"] and was sued in his supervisory capacity; Plaintiff contended that Defendant Epps could have intervened in his

---

[5]Paragraph 19 of Defendant Atwood's affidavit and paragraph 5 of Dr. Abangan's affidavit erroneously state this date as January 21, "2008." The date was apparently January 21, "2009."

case during the Administrative Remedy Program ["ARP"] proceedings and could initiate settlement of his claims.

## IV. Legal Analysis

### A. Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs[6] constitutes an actionable Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). However, delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, *which results in substantial harm. Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993), citing *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (delay must constitute "deliberate indifference"); *Mayweather v. Foti,* 958 F.2d 91 (5th Cir. 1992) (delay must result in substantial harm); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (delay must result in "substantial harm). See also *Olavis v. Correctional Corporation of America,* 215 Fed. Appx. 332 (5th Cir. 2007) (no substantial harm in delay in providing dental care). Furthermore, the §1983 plaintiff must show that the defendants had a sufficiently culpable state of mind. *See Wilson v. Seiter*, 111 S.Ct. 2321, 2322 (1991) (at a minimum prisoner must allege deliberate indifference to serious medical needs); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989).

Additionally, as the Fifth Circuit has stated, "[d]eliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of

---

[6]The court in *Hurt v. Mahon*, 2009 WL 2877001 at *2 (E.D. Va. Aug. 31, 2009), opined that "it is doubtful that a cataract is a sufficiently serious medical need to support an Eighth Amendment violation."

7

mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). Negligent or even erroneous medical treatment or judgment does not provide the basis for a constitutional claim. *Graves v. Hampton*, 1 F.3d 315, 219 (5th Cir. 1993).

In this case, Plaintiff cannot establish "deliberate indifference" on the part of Warden Caskey, Nurse Atwood, and Commissioner Epps. Warden Caskey played no role in the medical treatment of prisoners; that duty was delegated to the medical unit. Exhibit 4. Nurse Atwood deferred to the recommendations of the physicians in charge of patients' care; she had no reason to disagree with Dr. Butler's opinion regarding cataract surgery. Commissioner Epps was sued only in his supervisory capacity and was unaware that this situation existed until such time as suit was filed. To find deliberate indifference on their part, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). This standard cannot be met. It is common for cataract surgeries to be delayed, and cataract surgery is considered elective, according to the American Optometric Association's Optometric Clinical Practice Guidelines. Exhibit "2," p.3, n.4. There was no reason for these Defendants to doubt the medical recommendations of Dr. Butler.

There was also no requirement under the law that Dr. Butler yield to the recommendation of the optometrist, Dr. Clark. Deliberate indifference is not established simply because medical opinions differ. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). A prisoner plaintiff's medical claims are contentions that their Eighth Amendment rights to be free from cruel and inhuman treatment have been violated. However,

> ... neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmates's self-diagnoses, to summoning the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to take measures to ensure against a hypothetical future medical problem cannot amount to cruel and unusual punishment.

*Jackson v. Grondolsky*, 2009 WL 2896511, *5 (D.N.J. Aug. 11, 2009).

In this case, there was no legal requirement that Dr. Butler follow Dr. Clark's advice or that a medical specialist be summoned at a particular time. The failure to do so simply does not establish the required deliberate indifference to a serious medical need; thus, no Eighth Amendment violation can be established.

**B.    Substantial Harm**

As earlier stated, a *delay* in medical care can only be a constitutional claim if it results in *substantial harm*. *Mendoza*, 989 F.2d at 193 . In this case, although the cataract surgery was delayed for a significant period, the cataract was successfully removed and Plaintiff's sight was restored. The Court finds that Plaintiff suffered no *substantial harm* due to the delay. Plaintiff surely would have preferred an earlier removal, and his worsening sight was disturbing to him. Yet, in order to receive a money judgment for a constitutional violation against these Defendants, he must show that he was substantially harmed.

Additionally, there was a legitimate medical disagreement in this case as to when the cataract should have been removed. Although Dr. Butler was not a specialist, he was capable of determining the general timing of cataract surgery. Plaintiff's dissatisfaction with the timing of the surgery does not render this a constitutional claim, even if the surgery was recommended earlier. All parties agree that the surgery was successful.

9

Plaintiff's medical records confirm that Plaintiff received much medical care during the 17 months the surgery was delayed. This included examinations by physicians regarding other medical conditions, as well as examinations of his eyes and provision of eyeglasses. Under these circumstances, no substantial harm resulted from the delay. *See, e.g., Rylee v. Bureau of Prisons,* 2009 WL 633000 (D.S.C. Mar. 9, 2009), *appeal dismissed as moot*, 2009 WL 2917820 (4th Cir. Sept. 14, 2009) (no Eighth Amendment violation where prison officials delayed cataract surgery but monitored inmate's condition, even though optometrist recommended surgery); *Samonte v. Bauman*, 264 Fed. Appx. 634, 635 (9th Cir. 2008) (delay of more than two years before cataract surgery did not amount to deliberate indifference where inmate saw doctors to monitor his condition); *Cash v. Sadeghi*, 2009 WL 839132 (N.D. Cal. Mar. 30, 2009) (blurriness and double vision not found to be serious medical need resulting in further significant injury or unnecessary and wanton infliction of pain if untreated); *Williams v. Shelton*, 2008 WL 2789031 (D. Or. July 16, 2008) (delay in cataract surgery did not amount to deliberate indifference even where vision is inhibited, because delay did not cause harm).

**C.     Delay of the medical care**

Plaintiff complains that he did not receive the appropriate medical care until **after** he filed this lawsuit. Such delay, if it does not result in substantial harm, does not render this claim actionable. In *Williams v. Miles*, 2009 WL 2044679 (S.D.W.Va. July 7, 2009), a prisoner's cataract surgery was delayed until after the complaint was filed. One doctor recommended on three occasions that the prisoner have cataract surgery to address

dizziness, double vision, and poor depth perception.  Although plaintiff was seen medically during that period, no surgery was provided until after the lawsuit was filed.  *Id.* at *2.  The court found that no serious harm resulted from the delay, and deliberate indifference could not be established.  The court noted that "disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."  *Id.* at *1, citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir 1985).   The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*"  *Id.,* citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

The Court also notes the case of *Smith v. Kelly*, 2006 WL 3469610 (S.D. Miss. 2006).  In that case, the plaintiff complained that a doctor had recommended that one of his eyes should be removed but that the prison would not allow the surgery.  The court directed that medical records be obtained for review.  In response to that Order, the defendants notified the court that the surgery had been scheduled.  The surgery was successfully performed during the pendency of the lawsuit.  Thereafter, concluding that appropriate medical care had been rendered, Judge Sumner dismissed the complaint with prejudice.  *Id.* at *1-2.  The case does not become actionable simply because a prison defendant went forward with the medical care the prisoner plaintiff desired.

In *Rylee v. United States Bureau of Prisons*, 2009 WL 2917820 (4th Cir. Sept. 14, 2009), a federal inmate filed a *Bivens* claim, alleging deliberate indifference to his serious medical need for cataract surgery.  The district court dismissed his complaint, and he appealed. During the appeal, the prisoner underwent cataract surgery.  For that reason,

the Fourth Circuit Court of Appeals dismissed his appeal, holding that the controversy must be present at all stages of review.  "When a case becomes moot after judgment in the district court, the appellate court has no jurisdiction to hear the appeal."  *Id.* at *1.

Although the facts in *Rylee* are not directly on point, the Court finds its holding to be instructive under the present circumstances.  The issues regarding the medical care for Plaintiff's cataracts are now moot.  Defendants cannot be "punished" for providing Plaintiff the care he desired.

### D.     Supervisory Liability

There are insufficient facts stated by Plaintiff to sustain a claim of supervisory liability under section 1983 against Commissioner Epps or against Warden Caskey.  There is no vicarious liability under section 1983.  *Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978).  Fifth Circuit precedent requires either **personal involvement by an individual Defendant** in the alleged violation, or the **enforcement of some policy or practice resulting in the constitutional deprivation.**  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 536-37 (5th Cir. 1999); *Alton v. Texas A & M University*, 168 F.3d 196, 200 (5th Cir. 1999).  Neither Defendant Epps or Warden Caskey were personally involved in the health care of Plaintiff.  Warden Caskey has submitted an affidavit setting forth his responsibilities and duties as Senior Warden of EMCF.  Exhibit 4.  He asserts that he has never denied Plaintiff medical care because only the medical staff makes decisions regarding inmates' medical care.  The policy of EMCF was to delegate the medical care of inmates to the fully operational medical clinic and infirmary.  The Court takes judicial notice of the fact that

Commissioner Epps delegates the health care of prisoners to the facilities housing the inmates. Under these circumstances, no individuality liability could be established against either Defendants Epps or Caskey.

## V. Conclusion

For the reasons set forth herein, the Court finds that there are no genuine issues of material fact; that Defendants' motion is meritorious and should be granted; and, that Final Judgment in favor of all Defendants should be entered. This lawsuit shall not count as a strike against Plaintiff, as the Court finds it to be nonfrivolous.

THEREFORE, it is hereby ordered that Defendants' Motion for Summary Judgment, as supplemented is GRANTED, that this case is dismissed with prejudice, and a Final Judgment in favor of Defendants shall be entered on this date.

IT IS SO ORDERED, this the 28th day of September, 2009.


S/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE